UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DISNEY ENTERPRISES, INC., et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>KATHY FARMER, )<br>)<br>Defendant. ) | No. 1:05-CV-103<br><br>Collier/Lee |

## REPORT AND RECOMMENDATION

**I.  Introduction**

Plaintiffs Disney Enterprises, Inc., Columbia Pictures Industries, Inc., Warner Bros. Entertainment Inc., and Lions Gate Films, Inc. (collectively the "Plaintiffs") filed an application for entry of a default judgment against defendant Kathy Farmer ("Farmer") pursuant to Fed. R. Civ. P. 55 [Doc. No. 7-1] ("Plaintiffs' motion"). No response to Plaintiffs' motion has been filed by Farmer. Plaintiffs' motion has been referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. No. 12]. For the reasons set forth herein, it is **RECOMMENDED** Plaintiffs' motion [Doc. No. 7-1] be **GRANTED** and judgment be entered as follows: (1) Plaintiffs be awarded statutory damages under 17 U.S.C. § 504(c)(1) in the total amount of $6,000; (2) Plaintiffs be awarded $2,298.57 in attorneys' fees and $520.67 in costs under 17 U.S.C. § 505; and (3) Plaintiffs be awarded permanent injunctive relief under 17 U.S.C. §§ 502 and 503.

## II. **Background**

The Plaintiffs filed this action against Farmer on April 13, 2005 seeking damages and injunctive relief for willful copyright infringement under the copyright laws of the United States, 17 U.S.C. § 101, *et seq.* [Doc. No. 1-1 at ¶¶ 1-3, 14]. Plaintiffs allege they are among the world's leading creators and distributors of motion pictures, and that they brought this action to stop Farmer from copying and distributing to others unauthorized copies of the Plaintiffs' copyrighted motion pictures over the Internet [*id.* at ¶ 4]. Plaintiffs allege they are the holders of copyrights in numerous commercially released motion pictures, including *King Arthur, Harry Potter And The Prisoner of Azkaban, Spider-Man 2, The Forgotten*, and *Saw* ("the Copyrighted Motion Pictures")[1] [*id.* at ¶ 11]. Plaintiffs allege Farmer, without their permission and consent, has "used, and continues to use, an online media distribution system to distribute to the public, including by making available for distribution to others, the Copyrighted Motion Pictures" and that Farmer has violated their exclusive rights of reproduction and distribution of the Copyrighted Motion Pictures in violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* [Doc. No. 1-1 at ¶ 13]. Plaintiffs further allege Farmer's "acts of infringement have been willful, intentional, and in disregard of and with indifference" to their rights in the Copyrighted Motion Pictures [*id.* at ¶ 14]. In their complaint Plaintiffs seek: (1) actual or statutory damages at their election pursuant to 17 U.S.C. § 504, (2) attorneys' fees and costs pursuant to 17 U.S.C. § 505, and (3) injunctive relief pursuant to 17 U.S.C. §§ 502 and 503, prohibiting Farmer from further infringing the Plaintiffs' rights in the Copyrighted Motion Pictures and ordering Farmer to destroy all copies of the Copyrighted Motion Pictures [*id.*

---

[1] A Certificate of Copyright Registration issued by the Register of Copyrights for each of the Copyrighted Motion Pictures is attached to the Plaintiffs' complaint [Doc. No. 1-2 at 2-11].

2

at 4-5].

Farmer did not file an answer or otherwise respond to the Plaintiffs' complaint. Plaintiffs then filed a motion for entry of default on August 10, 2005 [Doc. No. 5-1][2]. Thereafter, a default was entered by the clerk of the district court on August, 23, 2005 [Doc. No. 6], and Plaintiffs' motion was filed on February 10, 2006.

Along with Plaintiffs' motion, Plaintiffs filed a proposed default judgment and permanent injunction in which they elect to seek statutory, instead of actual, damages in the total amount of $6,000 for the infringement [Doc. No. 7-2]. Plaintiffs also seek a permanent injunction enjoining Farmer from further infringement of Plaintiffs' copyrights in the Copyrighted Motion Pictures and any other of their motion pictures and attorneys' fees and costs in the total amount of $2,819.24 [*id.*].

In the memorandum filed in support of Plaintiffs' motion [Doc. No. 8-1] ("Plaintiffs' memorandum"), Plaintiffs state they:

> seek to recover a total of only $6,000 in statutory damages, or $1,200 per infringement. Rather than just arbitrarily seeking the maximum amount of statutory damages per infringement, Plaintiffs are requesting what they believe to be the amount that is reasonable and justified under the circumstances of this case, and the costs incurred by Plaintiffs in seeking to protect their exclusive rights under copyright law.

---

[2] Attached to Plaintiffs' motion for entry of default is a copy of the summons in this action, which shows it was served on Farmer on April 19, 2005 [Doc. No. 5-3 at 4-5]. Also attached to the Plaintiffs' motion for entry of a default is the declaration of Karen R. Thorland ("Thorland"), a partner in the law firm which represents the Plaintiffs in this action. Thorland's declaration states in pertinent part: (1) Plaintiffs sent a letter to Farmer urging her to file a response and advising her of their intent to seek a default judgment, (2) Plaintiffs have no reason to believe Farmer is an infant or incompetent person, and (3) a search for Farmer's name was conducted in the United States Military Locator database of LexisNexis, and that search, as well as efforts to contact each branch of the United States Military, did not reveal any evidence Farmer was in the military service [*id.* at 1-2].

[*id.* at 4]. Plaintiffs further state they are:

>  requesting total statutory damages in the amount of $6,000 because they believe that this total amount is reasonable and conservative given [Farmer's] conduct and the harm to Plaintiffs. For technical reasons . . ., it is likely that the five works that Plaintiffs downloaded from [Farmer] are only a fraction of the copyrighted works that [Farmer] actually infringed. [Farmer] should not gain the benefit of a windfall because of the accident of how many separate works [Farmer] was caught infringing on a given day.

[*id.* at 5-6].[3]

---

[3] Also attached to Plaintiffs' memorandum are copies of various default judgments and permanent injunctions in cases involving infringement of motion pictures copyrights in various cases [Doc. No. 8-2]. These are summarized as follows: *Columbia Pictures Industries, Inc. v. Atkins*, No. 3:05-cv-05045-SW-RED (W.D. Mo. July 15, 2005) (default judgment of damages of $6,000 for copyright infringement and costs of suit of $4,390.71; and permanent injunction against further infringement of plaintiff's copyright in motion picture *Spider-Man 2*); *Universal City Studios Productions LLLP, et al. v. Boyd*, No. 4 05-CV-00590 HEA, (E.D. Mo. July 11, 2005) (default judgment of damages of $6,000 for copyright infringement and costs of suit of $2,481.51; and permanent injunction against further infringement of plaintiffs' copyright in motion pictures *Van Helsing* and *Crossroads*); *New Line Productions, Inc., et al. v. Gill*, No. C2-05-376, (S.D. Ohio July 12, 2005) (default judgment of damages of $6,000 for copyright infringement and costs of suit of $2,709.09; and permanent injunction against further infringement of plaintiffs' copyright in motion pictures *Freddy vs. Jason* and *The Grudge*); *Screen Gems, Inc., et al. v. Nguyen*, Case No. 05-cv-1714 (E.D. Pa. July 22, 2005) (default judgment of damages of $6,000 for copyright infringement and costs of suit of $6,443.56; and permanent injunction against further infringement of plaintiffs' copyright in motion pictures *Van Helsing, Spider-Man 2*, and *You Got Served*); *Paramount Pictures Corporation, et al. v. Ducarmel, et al.*, No. 04 CV 08999 (S.D.N.Y. Aug. 3, 2005) (default judgment of damages of $6,000 for copyright infringement and costs of suit of $677; and permanent injunction against further infringement of plaintiffs' copyright in motion pictures *Torque; Club Dread; You Got Served; Bad Boys 2*; and *I, Robot*); *Paramount Pictures Corporation, et al. v. Mariott, et al.*, No. 04 CV 08999 (S.D.N.Y. Aug. 3, 2005) (default judgment of damages of $6,000 for copyright infringement and costs of suit of $748; and permanent injunction against further infringement of plaintiffs' copyright in motion pictures *School of Rock, Without a Paddle*; and *Soul Plane*); *Paramount Pictures Corporation, et al. v. Taveras, et al.*, No. 04 CV 08999 (S.D.N.Y. Aug. 3, 2005) (default judgment of damages of $6,000 for copyright infringement and costs of suit of $821.50; and permanent injunction against further infringement of plaintiffs' copyright in motion picture *Troy*); *Paramount Pictures Corporation, et al. v. Fortunato, et al.*, No. 04 CV 08999 (S.D.N.Y. Aug. 3, 2005) (default judgment of damages of $6,000 for copyright infringement and costs of suit of $661; and permanent injunction against further infringement of plaintiffs' copyright in motion pictures *White Chicks* and *Soul Plane*); *Warner Bros. Entertainment, Inc., et al. v. Triplett*, No.

The declaration of Alexandra N. DeNeve ("DeNeve"), an associate attorney representing the Plaintiffs, was filed in support of Plaintiffs' motion [Doc. No. 9-1]. DeNeve's declaration states that to combat infringement of Plaintiffs' copyrighted motion pictures on peer-to-peer ("P2P") networks, Plaintiffs retained MediaSentry ("MS"), a company which provides online anti-piracy and copyright protection services [*id.* at ¶ 3]. Under the supervision of Plaintiffs' counsel, MS searched several P2P networks for copies of Plaintiffs' copyrighted motion pictures [*id.* at ¶ 4]. MS then downloaded these files in order to obtain information to confirm the copyright infringement and identify the infringer [*id.*].

Initially, MS was only able to identify Farmer using the Internet Protocol ("IP") address assigned to her by her Internet Service Provider ("ISP"), BellSouth.net, Inc. [*id.* at ¶ 5]. Therefore, Plaintiffs filed a "John Doe" action in the Northern District of Georgia, the jurisdiction where BellSouth.net is located [*id.*]. In that action, Plaintiffs issued a subpoena to BellSouth.net, Inc. seeking the IP addressee's true identity [*id.* at ¶ 6]. In response to the subpoena, BellSouth.net, Inc. identified Farmer as the individual using the IP address obtained by MS at the time of one of the copyright infringements[4] [*id.* at ¶ 7]. Farmer did not reside in the Northern District of Georgia

---

4:05CV00020 (W.D. Va. Aug. 16, 2005) (default judgment of damages of $6,000 for copyright infringement and costs of suit of $2,777.86; and permanent injunction against further infringement of plaintiffs' copyright in motion pictures *Resident Evil, Hellboy*, and *Exorcist: The Beginning*); and, *Warner Bros. Entertainment Inc. v. Jones*, No. 3:05-cv-7171 (N.D. Ohio Aug. 22, 2005) (default judgment of damages of $6,000 for copyright infringement and costs of suit of $3,340.94; and permanent injunction against further infringement of plaintiff's copyright in motion picture *Harry Potter And The Prisoner of Azkaban*). Additional attachments to Plaintiffs' memorandum are four cases concerning the entry of default judgments and permanent injunctions involving copyright infringement of various sound recordings [Exhibit 2, Doc. No. 8-3].

[4] A copy of the subpoena to BellSouth.net, Inc. is attached to DeNeve's declaration as Exhibit 1 [Doc. No. 9-2]. A copy of the response of BellSouth.net, Inc. to the subpoena is attached to DeNeve's declaration as Exhibit 2 [Doc. No. 9-3].

5

according to the information provided, so Plaintiffs dismissed that action without prejudice, and filed the complaint at issue herein [*id.* at ¶ 8].

DeNeve's declaration also states after the complaint was filed on April 13, 2005: (1) the summons and complaint were served on Farmer on April 19, 2005, (2) Farmer failed to respond, and (3) on May 24, 2005, Plaintiffs sent Farmer a letter advising her she was in default and if she failed to answer, a default judgment would be sought [Doc. No. 9-1 at ¶ 11]. DeNeve's declaration states she has no reason to believe Farmer is either an infant, incompetent, or in the military [*id.* at ¶¶ 13, 14].

With regard to attorneys' fees and costs, DeNeve's declaration states "Plaintiffs have incurred attorneys' fees in the amount of $2,298.57 (which amount reflects a 15% discount on the attorneys' fees of Loeb & Loeb LLP for the purposes of this action only) and litigation costs in this case in the amount of $520.67, for a total of $2,819.24, in attorneys' fees and costs." [*id.* at ¶ 16]. DeNeve's declaration further states "upon information and belief, the rates requested are commensurate with those generally charged for similar work in this district" [*id.*]. Billing statements are attached to DeNeve's declaration as Exhibit 5 [Doc. No. 9-6].

Plaintiffs also filed the declaration of Thomas Carpenter ("Carpenter") [Doc. No. 10-1]. Carpenter is the Director of Data Services for MS, which is a company that provides online anti-piracy services for the motion picture, music, game and business software, and print publishing sectors [*id.* at ¶ 1]. Carpenter's declaration also states Plaintiffs hired MS to monitor and identify copyright infringement of certain motion pictures on P2P networks [*id.* at ¶ 3]. On November 4, 2005, MS downloaded four movies – *Harry Potter And The Prisoner of Azkaban, Spider-Man 2, The Forgotten* and *Saw* – offered by a user with the internet username "midnightmyty" [*id.* at ¶ 5]. On

6

November 5, 2005, MS downloaded another movie, *King Arthur*, from the internet site being used by "midnightmyty" [*id.*]. Carpenter's declaration states Farmer was offering many more motion pictures than MS was able to download because it takes several hours, generally at least two, to download a full motion picture file [*id.* at ¶¶ 6-7]. Attached as Exhibit 1 to Carpenter's declaration are downloaded "screenshots" which show "midnightmyty" was offering more movie titles than MS was able to download [*id.* at ¶ 6; Doc. No. 10-2]. In addition to the motion picture files, MS downloaded other information so "midnightmyty" could later be identified by her ISP [*id.* at 8]. MS was able to identify BellSouth.net, Inc. as the ISP for "midnightmyty" [*id.* at 9].

Plaintiffs also submitted the declaration of Dean C. Garfield ("Garfield"), the Vice President & Director, Legal Affairs Worldwide Anti-Piracy for the Motion Picture Association ("MPA") [Doc. No. 11 at ¶ 1]. Garfield's declaration states the Copyrighted Motion Pictures "were either still in theatrical release or had not yet been released on DVD/home video at the time of the infringement" [*id.* at ¶ 5]. Garfield's declaration states that the average motion picture costs approximately $100 million dollars to bring to market [*id.* at ¶ 6], that motion pictures generally are first theatrically released and during this period of time digital copies of a motion picture are not distributed to the public [*id.* at ¶ 7], and that three to six months after its box office opening, a motion picture is released on DVD and/or videocassette [*id.* at ¶ 8]. Garfield's declaration further states that Farmer's infringement of the Plaintiffs' copyrights in the Copyrighted Motion Pictures would not only impact DVD/home video revenues, it would also harm theatrical release revenues for those motion pictures [*id.*]; and that "[b]y offering, without authorization, Plaintiffs' copyrighted motion pictures for download on P2P networks with tens of thousands of potential users, if not more, [Farmer] has encouraged and facilitated the repeated, near-instantaneous worldwide infringement

7

of those motion pictures by others." [*Id.* at 9].

### III.  Plaintiffs' Motion

Upon a careful review of the record and applicable law, I find neither an evidentiary hearing nor oral argument is needed on any aspect of Plaintiffs' motion. In *Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388, 391 (C.D. Cal. 2005), the court granted the plaintiff's request for a default judgment, including statutory damages, attorneys' fees and costs, and injunctive relief based upon the plaintiff's application for a default judgment. The court in *Elektra* noted that although it would be preferable to decide issues such as default judgment, damages, attorneys' fees, costs and injunctive relief on their merits, the defendant's failure to answer the complaint, or make any appearance in the action, made a decision on the merits impractical, if not impossible. *Id.* at 393. The court in *Elektra* found the proposed injunctive relief was appropriate because the defendant failed to respond to the serious claims despite receiving adequate notice. *Id.* at 394. *See also Coleman v. Payne*, 698 F. Supp. 704, 705-07 (W.D. Mich. 1988) (the court granted injunctive relief pursuant to motion for default judgment supported by affidavit where the defendant's infringement of the plaintiffs' copyrights was willful); *Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003) (the court granted permanent injunctive relief in a default judgment stating in a copyright case irreparable harm is presumed on a showing of a reasonable likelihood of success on the merits and, for purposes of injunctive relief, a default judgment satisfies the element of success on the merits).

As noted above, Plaintiffs' complaint alleges Farmer's infringement was willful and intentional. Plaintiffs have submitted considerable undisputed evidence supporting their requests for statutory damages, attorneys' fees and costs, and injunctive relief. Despite receiving a letter

from Plaintiffs advising Farmer she was in default and, if she failed to answer, a default judgment would be sought, Farmer did not file an answer or make an appearance in this action. As discussed in more detail below, I find Plaintiffs' have met the requirements for a default judgment pursuant to Fed. R. Civ. P. 55(b)(2), thereby satisfying the requirement of success on the merits for purposes of injunctive relief. Thus, I conclude no valid purpose would be served in requiring either an evidentiary hearing or oral argument on Plaintiffs' motion. To the contrary, any such hearing or argument would only serve to increase the Plaintiffs' claim for attorneys' fees and costs.

**(1)** **Entry of a Judgment by Default**

Obtaining a default judgment is a two-step process: (1) the party seeking a default judgment first files a motion for entry of default by demonstrating that the opposing party has failed to answer or otherwise respond to the complaint, and (2) once the clerk has entered a default, the moving party may then seek entry of a default judgment against the defaulting party. *Keesh Construction, Inc. v. United States,* No. 1:02-CV-899, 2004 WL 2536840, *1 n.1 (S.D. Ohio Sep. 28, 2004) (citing Fed. R. Civ. P. 55). Rule 55(b) provides that the clerk may enter a judgment by default when the plaintiff's claim is for a sum certain or for a sum which can be computed with certainty and the defendant has been defaulted for failure to appear and is neither an infant nor incompetent. *Palladino v. General Crushed Stone Co.*, No. 96-CV-1355, 1997 WL 67792, *1 (N.D.N.Y. Feb. 13, 1997) (citing Fed. R. Civ. P. 55(b)). In all other cases, the party seeking a judgment by default must apply to the court for entry of a default judgment under Fed. R. Civ. P. 55(b)(2). *Id.*

In this instance, because Plaintiffs' claims are not for a sum certain or for a sum which can be computed with certainty, a judgment by default must be entered by the court under Fed. R. Civ. P. 55(b)(2), which states in pertinent part:

9

> In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party . . . shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary . . .

A party seeking a judgment by default must establish the following:

> (1) when and against what party the default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the defendant is not in military services such that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice has been served on the defaulting party, if required by Fed. R. Civ. P. 55(b)(2).

*Elektra,* 226 F.R.D. at 392. DeNeve's undisputed declaration satisfies these requirements.[5] As Farmer has never entered an appearance in this action, the notice requirement of Fed. R. Civ. P. 55(b)(2) does not apply.

Accordingly, I conclude Plaintiffs have satisfied their burden of showing they are entitled to an entry of judgment by default pursuant to Fed. R. Civ. P. 55(b)(2) and I **RECOMMEND** the Plaintiffs' motion [Doc. No. 7-1] be **GRANTED** with entry of a judgment as set forth below.

---

[5] DeNeve's declaration: (1) identifies when and against what party (Farmer) the default was entered [Doc. No. 9-1 at ¶ 11], (2) attaches a copy of the pleading to which default was entered, the Plaintiffs' complaint [Doc. No. 9-4], (3) states Plaintiffs have no reason to believe Farmer is either an infant or incompent [Doc. No. 9-1 at ¶ 13], and (4) states that after searching various military or military locator databases, Plaintiffs have discovered no evidence Farmer is serving in the military [*id.* at ¶ 14].

**(2)** **<u>Statutory Damages</u>**

Under the Copyright Act of 1976, a plaintiff (copyright owner) may elect to recover either the actual damages he suffered and any profits made by the infringers or, instead of actual damages, the plaintiff may elect to receive statutory damages under 17 U.S.C. § 504(c). *Peer Intern. Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir, 1990), *cert. denied*, 498 U.S. 1109 (1991) (citing 17 U.S.C. § 504(c)(1); *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1114 (2d Cir. 1986) (citing 17 U.S.C. §§ 504(b), 504(c)(1)). As noted above, Plaintiffs have elected to seek statutory damages against Farmer in the total principal amount of $6,000, or $1,200 per infringement of each of the five Copyrighted Motion Pictures, pursuant to 17 U.S.C. § 504 [Doc. No. 7-2 at 2-3; Doc. No. 8-1 at 4].

Title 17 U.S.C. § 504(c)(2) states in relevant part:

> **(c)** **Statutory Damages. –**
>
> **(1)** Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.
>
> **(2)** In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. . . .

District courts have wide discretion in setting damages within the statutory range set forth

11

in § 504(c)(1). *Cross Keys Pub. Co., Inc. v. Wee, Inc.*, 921 F. Supp. 479, 481 (W.D. Mich. 1995) (citing *F.W. Woolworth Co. v. Contemporary Arts,* 344 U.S. 228, 231-32 (1952)). Courts may consider several factors in determining statutory damages "including: the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendants' conduct, and the infringers' state of mind whether willful, knowing, or merely innocent." *Id.* In awarding statutory damages, courts may also consider "the goal of discouraging wrongful conduct." *Id.* Merely awarding statutory damages in the amount of the profits from a copyright infringement would do little to discourage infringers and it would not be "an effective sanction for enforcement of the copyright policy." *Id.* The range of statutory damages "formulated after long experience, not merely compels restitution of profit and reparation for injury but is also designed to discourage wrongful conduct." *Id.* (citing *F.W. Woolworth*, 344 U.S. at 233). "[A] plaintiff may recover statutory damages 'whether or not there is adequate evidence of the actual damages suffered by the plaintiff or of the profits reaped by defendant.'" *Peer Intern*., 909 F.2d at 1337 (quoting *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984)). Courts have particularly recognized a copyright owner's option to request statutory damages "when neither the owner's actual damages nor the infringer's profits are ascertainable or are difficult to calculate." *United Features Syndicate, Inc. v. Spree, Inc.*, 600 F. Supp. 1242, 1245 (E.D. Mich. 1984). The option of electing statutory damages is especially appropriate where "the information needed to establish an exact measure of actual damages is within the infringers' control and often is not fully disclosed." *Microsoft Corp. v. Sellers*, 411 F. Supp. 2d 913, 920 (E.D. Tenn. 2006).

In this instance, Plaintiffs seek $1,200 per movie infringement from Farmer, which is $450 per infringement more than the statutory minimum of $750 provided for in 17 U.S.C. § 504(c)(1).

12

The undisputed evidence submitted by the Plaintiffs, including DeNeve's declaration, the response of BellSouth.net to the subpoena in the action brought in the Northern District of Georgia, the Carpenter declaration, and the copy of the "screenshots" downloaded from the IP address "midnightmyty" show Farmer did infringe the Plaintiffs' copyrights in the Copyrighted Motion Pictures. The undisputed evidence, and particularly the amount of time needed to download a full motion picture file and the "screenshots," creates more than a reasonable inference that far more copyrighted movies – than the five Copyrighted Motion Pictures downloaded by MS – were downloaded, or at the very least available for downloading, from the IP address "midnightmyty". Further, the Garfield declaration, while it does not set forth any information which is specific to this action, establishes the financial impact of copyright infringements such as Farmer's on both the revenues from the theatrical release of a motion picture and DVD and/or videocassette sales of a copyrighted motion picture. Finally, Farmer, who has not entered an appearance in this action, has within her possession the evidence as to the exact amount of damages from her infringement, not the Plaintiffs. This makes it nearly impossible for Plaintiffs to offer proof of the actual damages resulting from Farmer's infringement of their copyrights.

Thus, I find an award against Farmer of $1,200 per infringement in statutory damages (*i.e.*, $6,000) is warranted and reasonable both to compensate Plaintiffs for lost profits as the result of Farmer's infringement of their copyrights and to deter future misconduct by Farmer and is supported by the evidence.[6] Accordingly, I **RECOMMEND** Plaintiffs be awarded statutory damages under

---

[6] Plaintiffs' complaint alleges Farmer's infringement was "willful, intentional, and in disregard of and with indifference to the rights of the Plaintiffs." [Doc. No. 1-1 at ¶ 14]. As such, under 17 U.S.C. § 504(c)(2), Plaintiffs could have sought damages against Farmer "to a sum of not more than $150,000."

13

17 U.S.C. § 504(c)(1) in the total amount of $6,000.

### (3) <u>Attorneys' Fees and Costs</u>

Plaintiffs seek attorneys' fees and costs from Farmer in the total amount of $2,819.24 [Doc. No. 7-1 at 2]. Title 17 U.S.C. § 505 provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

In a copyright action, the prevailing party is not automatically entitled to recover its attorneys' fees as an award of attorneys' fees is at the court's discretion. *Cross Keys Pub.*, 921 F. Supp. at 482 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). In determining whether awarding costs or attorneys' fees are warranted, a court may consider: (1) whether a complex or novel issue justified the litigation of the case, (2) whether the defendant made an attempt to avoid the infringement, and (3) whether the infringement was innocent. *Sailor Music v. IML Corp.*, 867 F. Supp. 565, 570 (E.D. Mich. 1994) (citing *Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 914 (D. Conn. 1980)).

Plaintiffs' complaint alleges Farmer's infringement of the copyrights in the Copyrighted Motion Pictures was willful and intentional [Doc. No. 1-1 at ¶ 14]. In a default judgment "well-pleaded factual allegations are sufficient to establish a defendant's liability." *National Satellite Sports, Inc. v. Mosley Entertainment, Inc.*, No. 01-CV-74510-DT, 2002 WL 1303039, *3 (E.D. Mich. May 21, 2002). Only the allegations in the complaint concerning the amount of damages are not controlling in a default judgment. *Id.* Thus, Farmer's infringement was not innocent.

Attached to DeNeve's declaration are billing statements reflecting costs in the total amount

14

of $520.67 and attorneys' fees in an amount of $2,298.57 [Doc. No. 9-6].[7] I conclude the number of hours and the hourly rates billed are reasonable and the costs and expenses sought are reasonable. Thus, I conclude Plaintiffs' request for attorneys' fees in the total amount of $2,298.57 is reasonable. Accordingly, I **RECOMMEND** Plaintiffs be awarded $2,298.57 in attorneys' fees and $520.67 in costs under 17 U.S.C. § 505.

### (4) Permanent Injunction

Plaintiffs also seek a permanent injunction against Farmer pursuant to 17 U.S.C. §§ 502 and 503 [Doc. No. 8-1 at 11-12]. In their proposed default judgment and permanent injunction, the Plaintiffs specifically seek the following injunctive relief:

> Defendant shall be and hereby is enjoined from directly or indirectly infringing Plaintiffs' rights under federal or state law in the following copyrighted motion pictures:
>
> • King Arthur;
> • Harry Potter And The Prisoner of Azkaban;
> • Spider-Man 2;
> • The Forgotten;
> • Saw; and
>
> any other motion picture, whether now in existence or later created, that is owned or controlled by Plaintiffs (or any parent, subsidiary, or affiliate of Plaintiffs) (the "Plaintiffs' Motion Pictures"), including without limitation by using the Internet or any online media

---

[7] Specifically, attached to DeNeve's declaration are billing records from the firm of Loeb & Loeb, LLP, in New York, New York [Doc. No. 9-6 at 2-3] listing 4.70 hours of time, at approximately $140 per hour for a total of $662.57 and billing records from the firm of Gearhiser, Peters, Lockaby, Cavett & Elliott, PLLC in Chattanooga, Tennessee including a statement [*id.* at 4-7] listing 6.0 hours of attorney time at $160 per hour for a total of $960, 1.80 hours of paralegal time at $75.00 per hour for a total of $135, and costs and expenses in a total amount of $520.67; a second statement [*id.* at 8-10] listing .90 hours of attorney time at $185 per hour for a total of $166.50, .20 hours of paralegal time at $75 per hour for a total of $15, and a third statement [*id.* at 8-10] listing 1.70 hours of attorney time at $185 per hour for a total of $314.50 and .60 hours of paralegal time at $75.00 per hour for a total of $45 [*id.* at 11].

> distribution system to reproduce (i.e., download) any of Plaintiffs' Motion Pictures, to distribute (i.e., upload) any of Plaintiffs' Motion Pictures or to make any of Plaintiffs' Motion Pictures available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiffs. Defendant also shall destroy all copies of Plaintiffs' Motion Pictures that Defendant has downloaded onto any computer hard drive or server without Plaintiffs' authorization and shall destroy all copies of those downloaded recordings transferred onto any physical medium or device in Defendant's possession, custody, or control.

[Doc. No. 7-2 at 2-3].

Title 17 U.S.C. § 502(a) states in pertinent part that "[a]ny court . . . may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." Title 17 U.S.C. § 503(b) provides for the destruction of copies made in violation of a copyright. Although "the issuance of an injunction is in the discretion of the court, courts have traditionally granted permanent injunctions if liability is established and a continuing threat to a copyright exists." *Jobete Music Co., Inc. v. Johnson Communications, Inc.*, 285 F. Supp. 2d 1077, 1092 (S.D. Ohio 2003). Permanent injunctions are generally granted when liability has been established where a "substantial likelihood of further copyright infringement" exists. *Sailor Music*, 867 F.Supp. at 570. In *Sailor*, which involved infringement of copyrighted songs, the court noted permanent injunctions are typically granted in situations involving unlawful infringement of copyrights in musical compositions "because of the strong probability that unlawful performances of other copyrighted material will occur." *Id.* Given "the public interest . . . in upholding copyright protections," injunctions are regularly issued pursuant to 17 U.S.C. § 502. *Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003). Moreover, "[c]ourts also regularly issue injunctions as part of default judgments." *Id.*

Plaintiffs have not only established Farmer's liability for willful and intentional infringement

16

of their copyrights in the Copyrighted Motion Pictures, but based upon the "screenshots" downloaded by MS from Farmer's "midnightmyty" IP address, they have established a strong likelihood of future unauthorized downloads which infringe their copyrights. Despite service and a notice from Plaintiffs that they intended to seek a judgment by default against her, Farmer has failed to in any way respond to the serious claims Plaintiffs have brought against her. Given all of the circumstances, I conclude failure to grant the permanent injunction sought by Plaintiffs would expose them to further infringement of their copyrights by Farmer without any recourse. Therefore, granting the injunctive relief sought by Plaintiffs is appropriate under the circumstances.

Accordingly, I **RECOMMEND** Plaintiffs be awarded permanent injunctive relief as requested in Plaintiffs' proposed default judgment and permanent injunction under 17 U.S.C. §§ 502 and 503.

## IV. Conclusion

For the reasons set forth in detail above, it is **RECOMMENDED**[8] Plaintiffs' motion [Doc. No. 7-1] be **GRANTED** and judgment be entered as follows:

(1)  Plaintiffs be awarded statutory damages under 17 U.S.C. § 504(c)(1) in the total amount of $6,000;

(2)  Plaintiffs be awarded $2,298.57 in attorneys' fees and $520.67 in costs under

---

[8] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

17 U.S.C. § 505; and

(3) Plaintiffs be awarded permanent injunctive relief under 17 U.S.C. §§ 502 and 503 as follows:

a) Farmer shall be and hereby is enjoined from directly or indirectly infringing Plaintiffs' rights under federal or state law in the following Copyrighted Motion Pictures: *King Arthur; Harry Potter And The Prisoner of Azkaban; Spider-Man 2; The Forgotten; Saw*; and any other motion picture, whether now in existence or later created, that is owned or controlled by Plaintiffs (or any parent, subsidiary, or affiliate of Plaintiffs) (the "Plaintiffs' Motion Pictures"), including without limitation by using the Internet or any online media distribution system to reproduce (i.e., download) any of Plaintiffs' Motion Pictures, to distribute (i.e., upload) any of Plaintiffs' Motion Pictures or to make any of Plaintiffs' Motion Pictures available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiffs; and

b) Farmer also shall destroy all copies of Plaintiffs' Motion Pictures that Farmer has downloaded onto any computer hard drive or server without Plaintiffs' authorization and shall destroy all copies of those downloaded recordings transferred onto any physical medium or device in Farmer's possession, custody, or control.

                          s/*Susan K. Lee*
                          SUSAN K. LEE
                          UNITED STATES MAGISTRATE JUDGE